Anthony L. HEINEMANN, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

Anthony L. Heinemann, Appellant
(Defendant),

v.

The State of Wyoming, Appellee
(Plaintiff).

Nos. 99–135, 99–143.

Supreme Court of Wyoming.

Oct. 26, 2000.

Representing Appellant: Sylvia L. Hackl, Public Defender; Donna D. Domonkos, Appellate Counsel; and John J. DeLeon, Legal Intern.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director Prosecution Assistance Program; Ericka Smith and Stacy Martinez, Student Interns.

Before LEHMAN, C.J., and THOMAS, MACY,* GOLDEN, and HILL, JJ.

.THOMAS, Justice.

The novel question that Anthony Lee Heinemann (Heinemann) presents, in his appeals from convictions and sentences in two related cases,[1] is the efficacy of his prior conviction in Colorado for attempted first-degree sexual assault to invoke the enhanced sentencing provisions of Wyo.Stat.Ann. § 6–2–306(d) (Lexis 1999). Heinemann also argues error attributable to the trial court's admission into evidence, pursuant to W.R.E. 404(b), of prior sexual assaults. We hold that attempted first-degree sexual assault, as defined by Colorado statutes, is a qualifying prior offense for purposes of sentence enhancement under Wyo.Stat.Ann. § 6–2–306(d). We also are satisfied that the trial court did not err with respect to the evidence of prior sexual assaults admitted at Heinemann's trials. We affirm the Judgment and Sentence of the Court entered in the trial court in both cases.

Heinemann, in the Brief of Appellant, filed in his behalf in the consolidated appeals, states the issues in this way:

I. Whether inclusion of attempted sexual assault for sentencing enhancement via W.S. 6–3–306 is error?

II. Did the Court deprive Appellant of due process and a fair trial when it failed to establish 404(b) evidence by clear and convincing evidence?

III. Was Appellant's due process rights and right to a fair trial violated when 404(b) evidence was impermissibly allowed at trial?

The Brief of Appellee, filed for the State, restates the issues in this way:

I. Did the district court in Docket 24, No. 491, properly sentence appellant to life without parole under the provisions of Wyo.Stat. § 6–2–306(d)?

II. Was the district court required to make findings that the prior acts of appellant, admitted under Wyoming Rule of Evidence 404(b), were established by clear and convincing evidence?

III. Did the district court properly admit evidence of prior acts of appellant under Wyoming Rule of Evidence 404(b)?

On May 20, 1997, four junior high school students were walking home from school. They encountered Heinemann, who was in a maroon car, in the parking lot of a video store. The four minors, A.T., a thirteen year-old female; Z.K., a twelve year-old male; and T.H. and T.T., both fourteen year-old females, either requested or were offered a ride by Heinemann. After asking the students if they liked to party, and receiving an affirmative answer from A.T., who said she liked tequila, Heinemann stopped at a liquor store where he purchased some tequila, wine coolers and peppermint schnapps. They then picked up some lemons, and proceeded to Heinemann's apartment.

---

* Retired June 2, 2000.

1. The first case resulted in convictions for taking indecent liberties with a child, in violation of Wyo.Stat.Ann. § 14–3–105(a) (Lexis 1999), and furnishing alcohol to a minor, in violation of Wyo.Stat.Ann. § 12–6–101(a) (Lexis 1999). The second case resulted in a conviction for sexual assault in the third degree, in violation of Wyo. Stat.Ann. § 6–2–304(a)(iii) (Lexis 1999), and an enhanced sentence of life imprisonment without parole was imposed in the latter case pursuant to Wyo.Stat.Ann. § 6–2–306(d) (Lexis 1999).

At his apartment, they listened to music, and the students drank some of the alcoholic beverages. A.T. became intoxicated, and she went with Z.K. into the back bedroom. While they were out of the room, Heinemann asked T.H. and T.T. to play his version of strip poker in which the losers would remove clothing and possibly have sex. The two girls declined, even after Heinemann offered them twenty dollars to play. A.T., quite intoxicated, came out of the bedroom, and lost her balance while talking to a friend on the telephone. Heinemann held her up from behind, placed his hands under her shirt and brassiere, and rubbed her breasts until Z.K. told him to stop.

The circumstances leading to the second charge occurred on October 16, 1997. On that occasion, Heinemann offered a ride to A.G ., a female high school student aged eighteen. A.G. was across the street from her high school smoking a cigarette. Heinemann, driving a red tone car, offered to take A.G. to buy more cigarettes. Instead, he drove to his apartment, and invited A.G. to come in for a little bit. Once inside, Heinemann mixed two alcoholic drinks, and offered one to A.G. When she declined, Heinemann tried to force A.G. to take the drink, and spilled it on her.

Heinemann then proposed a card game, and told A.G. that if she won, he would take her back to school, but if he won, she would remove an article of clothing. A.G. reluctantly agreed. They each picked a card, and Heinemann told A.G. that he had won. He told her she had to take off a piece of clothing, and when she balked, he forcibly removed her t-shirt. Heinemann then proposed that they play another hand, promising to return her shirt and take her back to school if she won. Heinemann declared himself the winner of the second game, and demanded A.G.'s pants, which he forcibly removed when she resisted again. He then suggested a third round of the card game, still promising to return A.G.'s clothing and take her back to school if she won. Predictably, Heinemann won again, and he demanded A.G.'s brassiere, which he forcibly removed when she resisted.

Heinemann, after removing his own clothes, began kissing A.G.'s breasts, and told her he would use a condom. A.G. kicked Heinemann, dressed hastily, and attempted to leave the apartment. Heinemann grabbed her, and pulled her back, telling her she was not going anywhere. A.G. fell to the floor, hitting her head on a coffee table. She again attempted to leave, this time getting a few steps beyond the door, when Heinemann grabbed her hair, pulled her back into the apartment, and began choking her. He then apparently decided to end the assault, and offered to take A.G. back to school. Heinemann put his clothes back on, and at that point in time, a police officer, summoned by a neighbor, arrived.

The events of May 20, 1997, involving the four minors, resulted in Heinemann being charged in the District Court for the First Judicial District, in and for Laramie County, in Docket 24, No. 474, with one count of taking indecent liberties with a minor and one count of furnishing alcohol to minors. He entered pleas of not guilty to both counts. In response to a motion from Heinemann, the trial court ordered the State to give notice if it intended to introduce evidence under W.R.E. 404(b). Heinemann also filed a motion in limine, seeking to prohibit the State from introducing evidence of prior sexual assault allegations or convictions.

Heinemann's assault on A.G. was addressed by charging him with one count of attempted first-degree sexual assault and one count of third-degree sexual assault in the District Court for the First Judicial District, in and for Laramie County, in Docket 24, No. 491. He entered pleas of not guilty to both counts. As in the other case, the trial court ordered the State to provide notice of its intent to introduce evidence under W.R.E. 404(b). Heinemann again filed a motion in limine to prevent the State from using evidence of prior sexual assaults.

In response to Heinemann's motion in Docket 24, No. 474, the State filed notice of its intent to introduce, as W.R.E. 404(b) evidence, five separate instances of Heinemann's prior bad acts:

    1. Evidence that, in 1988 in Colorado, the Defendant engaged in similar conduct

as that described by A.T. with [S.L.], a sixteen (16) year old. [S.L.] was approached by the Defendant in his vehicle, was given a ride, was given alcohol, and was forced to perform sexual acts before he would take her home.

2. Evidence that, in 1988 in Colorado, the Defendant engaged in similar conduct and use of force as that described by A.T. with [M.M], his roommate's girlfriend. She was home alone with the Defendant when he turned off the light, came up behind her, shoved her into the door, pressed his body into hers, and attempted to kiss her neck. She pushed him away and ran upstairs to her bedroom. The defendant pursued her into the bedroom, grabbed her by the arm and pulled her sweater off, grabbing her breast in the process. He then pushed her down onto the bed where she was able to kick him in the stomach. He left for [a] moment, but returned and started pushing her around again. She was able to dial 911, but the Defendant hung up the phone before she could speak. [M.M.] then ran downstairs to use the phone in the kitchen, but the Defendant tackled her as she reached the phone. Police arrived shortly thereafter. Police found an open prophylactic on the coffee table that the Defendant intended to use.

3. Evidence that, in May 1997, the Defendant engaged in similar conduct as that described by A.T. with [A.G.], an eighteen (18) year old. [A.G.] was approached by the Defendant in his vehicle, was given a ride to his apartment, was offered alcohol, and forced to submit to sexual contact and attempted sexual intrusion.

4. Evidence that, in 1995 in Cheyenne, Wyoming, the Defendant engaged in similar conduct as that described by A.T. with [R.F.], a seventeen (17) year old neighbor. He approached her and offered her alcohol if she would come to his apartment. When she refused and began to walk away, the

Defendant grabbed her by the arm and pulled her towards him. She pulled away and left.

5. Evidence that, in August in Cheyenne, Wyoming, the Defendant engaged in similar behavior as that described by A.T. with M.L., age fifteen (15). M.L. was walking her dog when the Defendant pulled up beside her in his vehicle and said hello. She said hi in return and kept on walking. The Defendant continued to drive along beside her waving a twenty (20) dollar bill at her. She then ran to a friend'[s] home. The Defendant continued to drive by the home of her friend until the friend's mother yelled at him to leave the young girls alone.

In response to Heinemann's motion in Docket 24, No. 491, the State gave notice of its intent to introduce the same evidence of Heinemann's prior sexual assaults, interchanging the assault on A.T. with the assault on A.G.

The State asserted that the acts were admissible under W.R.E. 404(b) to show plan, preparation, intent, course of conduct, and absence of mistake or accident. The trial court combined the hearing on Heinemann's motions in limine, but declined to rule at that time, saying that its ruling would depend on events at trial.

Heinemann's trial in Docket 24, No. 474 began on March 16, 1998. The trial court allowed the State to present evidence of four of the five prior bad acts enumerated by the State. No evidence of the assault on M.M. was offered, but evidence was presented regarding Heinemann's conduct involving M.L. The jury found Heinemann guilty on both counts.

Following Heinemann's conviction in Docket 24, No. 474, the State filed notice, in Docket 24, No. 491 of its intent to seek sentence enhancement pursuant to Wyo.Stat. Ann. § 6–10–201 (Lexis 1999).[2] In that case,

---

2. Wyo.Stat.Ann. § 6–10–201 reads:
  (a) A person is an habitual criminal if:
  (i) He is convicted of a violent felony; and
  (ii) He has been convicted of a felony on two
  (2) or more previous charges separately brought

and tried which arose out of separate occurrences in this state or elsewhere.
  (b) An habitual criminal shall be punished by imprisonment for:

the trial court issued an order stating that evidence of Heinemann's conduct with M.L. was not admissible, but the other four prior bad acts were admissible. The trial began on June 3, 1998. The jury heard evidence of the assaults on S.L. and M.M., but the trial court ruled during the trial that it would not allow evidence concerning A.T. and R.F. The jury acquitted Heinemann of attempted first-degree sexual assault, but convicted him of third-degree sexual assault upon A.G.

The trial court combined the sentencing proceedings in the two cases. In Docket 24, No. 474, the trial court sentenced Heinemann to six months confinement on the conviction for furnishing alcohol to a minor, and six to eight years for the immoral acts with a minor conviction. In Docket 24, No. 491, the trial court imposed a life sentence without possibility of parole, pursuant to Wyo.Stat.Ann. § 6–2–306(d). The judgment and sentence in Docket 24, No. 474 form the basis for Heinemann's appeal designated as Case No. 99–135 in this Court, while Case No. 99–143 is his appeal of the judgment and sentence in Docket 24, No. 491.

In his first issue, Heinemann contests the imposition of a life sentence with no possibility of parole, under the sentence enhancement provisions of Wyo.Stat.Ann. § 6–2–306(d). He asserts three grounds for his challenge of the enhanced sentence. Heinemann first argues that his conviction in Colorado should not count as a prior offense for sentence enhancement purposes because he was convicted of an attempted, not a completed, assault. Next, Heinemann claims that he did not receive the required notice of the State's intent to seek sentence enhancement. Finally, he contends that a life sentence with no possibility of parole is disproportionate to his offenses.

■ This issue presents initially a question of statutory interpretation, which is afforded a *de novo* review. *Ryan v. State*, 988 P.2d 46, 63 (Wyo.1999). When our task is statutory interpretation, this Court looks first to the language of the statute to determine whether it is ambiguous. *Id.* If we

determine that the statute is unambiguous, we give effect to its plain meaning without invoking any rules of interpretation. *Id.*

In his initial argument on this issue, Heinemann contends that enhanced sentencing under Wyo.Stat.Ann. § 6–2–306(d) was not appropriate because the conviction in Colorado did not qualify as a prior offense. Our statute provides:

(d) An actor who is convicted of sexual assault shall be punished by life imprisonment without parole if the actor has two (2) or more previous convictions for any of the following designated offenses, which convictions resulted from charges separately brought and which arose out of separate occurrences in this state or elsewhere:

(i) A crime defined in W.S. 6–2–302 through 6–2–304 or a criminal statute containing the same or similar elements as a crime defined by W.S. 6–2–302 through 6–2–304;

(ii) Repealed by Laws 1997, ch. 135, § 2[;]

(iii) A conviction under W.S. 14–3–105(a), or a criminal statute containing the same or similar elements as the crime defined by W.S. 14–3–105(a), if the circumstances of the crime involved a victim who was under the age of sixteen (16) at the time of the offense and an actor who was at least four (4) years older than the victim.

Wyo.Stat.Ann. § 6–2–306(d). Heinemann argues that the crime of attempted sexual assault is not [a] crime defined in W.S. 6–2–302 through 6–2–304 or a criminal statute containing the same or similar elements as a crime defined by W.S. 6–2–302 through 6–2–304. Wyo.Stat.Ann. § 6–2–306(d)(i). His argument is premised upon his contention that inchoate offenses such as attempt are not explicitly within the purview of the statute.

■ We begin our analysis of the issue by recognizing that the Colorado statute under which Heinemann was convicted, Colo.Rev. Stat. § 18–3–402, is a criminal statute con-

(i) Not less than ten (10) years nor more than fifty (50) years, if he has two (2) previous convictions;

(ii) Life, if he has three (3) or more previous convictions.

taining the same or similar elements as a crime defined by W.S. 6–2–302 through 6–2–304. Wyo.Stat.Ann. § 6–2–306(d)(i). Colo. Rev.Stat. § 18–3–402(1) reads:

(1) Any actor who knowingly inflicts sexual intrusion or sexual penetration on a victim commits a sexual assault in the first degree if:

(a) The actor causes submission of the victim through the actual application of physical force or physical violence; or

(b) The actor causes submission of the victim by threat of imminent death, serious bodily injury, extreme pain, or kidnapping, to be inflicted on anyone, and the victim believes that the actor has the present ability to execute these threats; or

(c) The actor causes submission of the victim by threatening to retaliate in the future against the victim or any other person, and the victim reasonably believes the actor will execute this threat. As used in this paragraph (c) to retaliate includes threats of kidnapping, death, serious bodily injury, or extreme pain; or

(d) The actor has substantially impaired the victim's power to appraise or control the victim's conduct by employing, without the victim's consent, any drug, intoxicant, or other means for the purpose of causing submission; or

(e) The victim is physically helpless and the actor knows the victim is physically helpless and the victim has not consented.

Wyo.Stat.Ann. § 6–2–302 (Lexis 1999) provides:

(a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:

(i) The actor causes submission of the victim through the actual application, reasonably calculated to cause submission of the victim, of physical force or forcible confinement;

(ii) The actor causes submission of the victim by threat of death, serious bodily injury, extreme physical pain or kidnapping to be inflicted on anyone and the victim reasonably believes that the actor has the present ability to execute these threats;

(iii) The victim is physically helpless, and the actor knows or reasonably should know that the victim is physically helpless and that the victim has not consented; or

(iv) The actor knows or reasonably should know that the victim through a mental illness, mental deficiency or developmental disability is incapable of appraising the nature of the victim's conduct.

It is apparent that a conviction in Colorado for first-degree sexual assault would be a qualifying offense under the Wyoming statute providing for enhanced punishment for sexual offenders.

■ The question, then, is whether an attempted sexual assault is a qualifying offense in the same manner as a completed sexual assault. Neither party has provided, nor have we found, persuasive authority from any other jurisdiction precisely on point. A Colorado case strongly suggests, however, that an attempted sexual assault should be considered the equivalent of a completed sexual assault in this instance. As a condition of parole, Colo.Rev.Stat. § 17–2–201(5)(g)(I) (1997) requires that any offender convicted of an offense for which the factual basis involved a sexual assault as defined in part 4 of article 3 of title 18, C.R.S. must submit to genetic and chemical testing. A Colorado court recently affirmed a decision requiring an appellant convicted of **attempted** first-degree sexual assault to comply with Colo. Rev.Stat. § 17–2–201(5)(g)(I). *Jamison v. People*, 988 P.2d 177, 179 (Colo.App.1999). Although the appellant in *Jamison* did not argue any distinction between attempted and completed sexual assaults, the Colorado court must have assumed, as a matter of law, that any distinction between the two was not important in that instance. This reasoning is sound; the distinction between an attempt and a completed crime is only whether the antisocial behavior succeeded. The danger to society is the same whether or not an offender succeeds in his criminal endeavor.

Heinemann next argues that the State did not provide adequate notice that it would seek an enhanced sentence under Wyo.Stat. Ann. § 6–2–306(d). Prior to Heinemann's

second trial, the State filed notice of its intent to seek an enhanced sentence pursuant to the habitual criminal statute. In the trial of that case, however, Heinemann was convicted of third-degree sexual assault, but acquitted on the charge of attempted first-degree sexual assault. Because third-degree sexual assault is not classified as a violent felony for purposes of Wyo.Stat.Ann. § 6–10–201, the enhancement provision of that section was not applicable.[3]

■ Unlike the habitual criminal statute, Wyo.Stat.Ann. § 6–2–306 does not require that notice be provided to the accused. Absent that additional statutory protection, Heinemann was entitled only to the due process protections required in any criminal prosecution. *Mehring v. State*, 860 P.2d 1101, 1110 (Wyo.1993) (a sentence within the range prescribed by Wyo.Stat.Ann. § 6–2–306 will not be disturbed on appeal absent due process defects.). Due process requires that a criminal defendant receive 'reasonable notice and an opportunity to be heard regarding the possibility of an enhanced sentence for recidivism.' *Damerville v. United States*, 197 F.3d 287, 290 (7th Cir.1999), *cert. denied*, — U.S. ——, 120 S.Ct. 2020, 146 L.Ed.2d 967 (2000) (*quoting United States v. Belanger*, 970 F.2d 416, 418 (7th Cir.1992)).

In protecting Heinemann's right to due process, we must consider what notice is required for sentence enhancement, under a statute that is silent regarding notice, in order to protect the defendant's right to due process. We turn for guidance to federal interpretations of a federal statute, the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1). The ACCA mandates a minimum fifteen-year sentence for violators who have three prior serious drug or violent felony offenses. *United States v. Mauldin*, 109 F.3d 1159, 1162–63 (6th Cir.1997). Like the statute invoked in this case, the ACCA does not include a particular notice requirement. Federal appellate courts have determined that in the absence of statutory notice standards, pretrial notice of intent to seek sentence enhancement is not required.

*Mauldin*, 109 F.3d at 1162–63; *United States v. Gibson*, 64 F.3d 617, 625–26 (11th Cir. 1995), *cert. denied*, 517 U.S. 1173, 116 S.Ct. 1580, 134 L.Ed.2d 678 (1996) (due process was not offended even though the appellant did not receive written notice of enhancement until the day of sentencing, where the appellant's trial counsel was aware of appellant's prior convictions .).

■ In advance of his second trial, Heinemann received notice of the State's intent to seek enhancement under the habitual criminal statute. After the jury found him guilty, but over a month before sentencing, Heinemann received notice that the State would seek an enhanced sentence under Wyo.Stat. Ann. § 6–2–306. These circumstances satisfy the requirements of due process. Heinemann was afforded due process with regard to the enhanced sentence because he received reasonable notice and an opportunity to be heard. No error exists in this regard.

■ In his final attack on his sentence, Heinemann contends that his life sentence is disproportional to the crimes of which he stands convicted. He claims that he was essentially sentenced to life for, assuming guilt in all cases, grabbing the breasts of two girls and engaging in a game of strip poker in a non-consensual fashion. In reality, Heinemann became qualified for a life sentence not by the offenses with which he was charged in Wyoming, but by the demonstrable fact that he is a sexual predator who is a habitual sex offender. The intent of the enhanced sentencing provision is to protect the public from individuals who have demonstrated that they are unwilling or unable to conform their conduct to the laws of this state. By his proven conduct, Heinemann has demonstrated, to our satisfaction, that he is a repeat sex offender, despite the failure of some of his attempts because of police interference or victim resistance. The need to protect society is patent, and no justification is presented to persuade this Court that it should refuse to invoke the enhanced sentencing statute until Heinemann succeeds in

---

**3.** 'Violent felony' means murder, manslaughter, kidnapping, sexual assault in the first or second degree, robbery, aggravated assault, aircraft hi-jacking, arson in the first or second degree or aggravated burglary. Wyo.Stat.Ann. § 6–1–104(a)(xii) (Michie 1997).

inflicting injury or worse in three more sexual assaults.

■ Heinemann argues in presenting his second issue that the trial court erred in failing to require clear and convincing evidence that the evidence admitted pursuant to W.R.E. 404(b) was true. He also claims the trial court erred by not issuing a ruling prior to trial on his motion to suppress that evidence. The State responds that it is not required to establish the W.R.E. 404(b) evidence by a standard of clear and convincing evidence, and the trial court had good cause to defer ruling on Heinemann's motion until trial. The issue of whether the trial court properly applied W.R.E. 404(b) is also a question of law which we review *de novo.* Our previously discussed guidelines for *de novo* review apply.

■ In support of his claim that prior acts admitted under W.R.E. 404(b) must be established by clear and convincing evidence, Heinemann looks to this Court's decisions in *Dean v. State,* 865 P.2d 601, 606 (Wyo.1993) and *Bishop v. State,* 687 P.2d 242, 246 (Wyo. 1984), *cert. denied,* 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985). In *Bishop,* we said that for prior bad acts to be admissible, the proof of those acts 'must be plain, clear, and convincing.' *Bishop,* 687 P.2d at 246 (*quoting United States v. Myers,* 550 F.2d 1036, 1044–45 (5th Cir.1977)). We modified the test in *Dean,* and said that '[t]he extent to which the prosecution plainly, clearly, and convincingly can prove the other similar crimes * * *' was one of five factors to be considered. *Dean,* 865 P.2d at 606 (*quoting Longfellow v. State,* 803 P.2d 848, 851 (Wyo. 1990)). We also recognized that we had prescribed a balancing test pursuant to which the State need not satisfy each of the five factors to justify the admission of W.R.E. 404(b) evidence. *Dean,* 865 P.2d at 606. In *Vigil v. State,* 926 P.2d 351, 354–57 (Wyo. 1996), we abandoned the *Bishop* test in favor of the four-part test prescribed in *Huddleston v. United States,* 485 U.S. 681, 691–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988). The *Huddleston* test allows the admission of prior bad acts evidence if:

*1) [T]he evidence is offered for a proper purpose; 2) the evidence is relevant; 3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and 4) upon request, the trial court instructs the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted.*

*Vigil,* 926 P.2d at 357 (emphasis in original).

■ The *Huddleston* test, adopted in *Vigil,* does not specifically require an evaluation of the prosecution's ability to prove the prior bad acts. The decisions of federal courts regarding the quantum of proof required to admit evidence pursuant to F.R.E. 404(b) are persuasive because W.R.E. 404(b) is patterned after the parallel federal rule. *Kimbley v. City of Green River,* 642 P.2d 443, 445 n. 3 (Wyo.1982). We are persuaded by the decisions of federal courts requiring that Rule 404(b) evidence must be established by a preponderance of the evidence. *See United States v. Baker,* 82 F.3d 273, 276 (8th Cir.), *cert. denied,* 519 U.S. 1020, 117 S.Ct. 538, 136 L.Ed.2d 423 (1996); *United States v. Clemons,* 32 F.3d 1504, 1508 (11th Cir.1994), *cert. denied,* 514 U.S. 1086, 115 S.Ct. 1801, 131 L.Ed.2d 728 (1995); and *United States v. Clarke,* 24 F.3d 257, 264 (D.C.Cir.1994). We hold, therefore, that the trial court was not required to have the State establish the prior bad acts by clear and convincing evidence, and thus did not err by failing to do so.

■ The deferral of a ruling on Heinemann's pretrial motion until trial is a matter within the trial court's discretion, and we do not disturb it absent an abuse of that discretion. On the subject of judicial discretion, we have said:

We perceive the core of our inquiry as reaching the question of reasonableness of the choice made by the trial court. Henceforth, we will turn to a definition adopted in *Martin v. State,* 720 P.2d 894, 897 (Wyo. 1986), in which we said:

Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria: it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously.

*Byerly v. Madsen*, 41 Wash.App. 495, 704 P.2d 1236 (1985).

*Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998).

Heinemann invokes W.R.Cr.P. 12(f) as authority demonstrating that the trial court erred when it declined to rule on his pretrial suppression motion. That rule reads, in relevant part:

A motion made before trial shall be determined before trial unless the court, for good cause, orders that it be deferred for determination at the trial of the general issue or until after verdict, but no such determination shall be deferred if a party's right to appeal is adversely affected.

Heinemann argues that the trial court violated W.R.Cr.P. 12(f) by failing to specifically declare what constituted good cause for the delay in ruling on the motion until trial. He further contends that the delay in the ruling inflicted unfair prejudice upon him because he was unable to properly prepare for trial without knowing what evidence would be accepted.

At the hearing on Heinemann's suppression motion, the trial court indicated that it would defer ruling on the motion because the admissibility of the challenged evidence would depend on some things that happen at the trial and the state of the record at the time that they are offered. That statement is an articulation by the trial court of a reason for deferring its ruling. We discern nothing unreasonable about the trial court's choice to defer ruling on Heinemann's pretrial motion. In accordance with the standard pronounced in *Vaughn*, we hold that the decision to defer the ruling was not an abuse of the trial court's discretion.

In his final assignment of error, Heinemann contends that the trial court erred in its ruling on the admissibility of prior bad acts into evidence pursuant to W.R.E. 404(b). Decisions regarding the admission of evidence are within the sound discretion of the trial court, and will not be disturbed absent an abuse of that discretion. *Streitmatter v. State*, 981 P.2d 921, 926 (Wyo. 1999). That standard is applied in situations involving W.R.E. 404(b) evidence, in which

we have held that the discretion of the trial court is not abused so long as there is a legitimate basis for the trial court's ruling. *Daniel v. State*, 923 P.2d 728, 734 (Wyo.1996) (*quoting Dean*, 865 P.2d at 606).

Heinemann argues that the admission of W.R.E. 404(b) evidence at his trials violated all four elements of the *Huddleston* test that we adopted in *Vigil*. We address seriatim each of his contentions. First, he claims that the evidence was not admitted for a proper purpose. The trial court determined that the prior bad acts were admissible to show motive, intent, plan, or preparation. Heinemann insists that none of those constitute a proper purpose for admitting evidence of prior sexual assaults in these trials for sexual assault. Applicable case authority persuades us otherwise. We have held that all four of the purposes articulated by the trial court are proper uses of prior bad act evidence in a trial for sexual assault. *Rigler v. State*, 941 P.2d 734, 738 (Wyo.1997) (evidence of uncharged prior sexual assaults is admissible to show preparation, plan, and intent); *Rivera v. State*, 840 P.2d 933, 940–41 (Wyo.1992) (evidence of prior sexual assaults is admissible to show intent, motive, and plan).

The second prong of the *Huddleston* test addresses the relevancy of the challenged evidence. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. W.R.E. 401. Because the State was required to prove each element of the charged offenses beyond a reasonable doubt, facts supporting each element were of consequence to the determination of the trials. We previously have determined that W.R.E. 404(b) evidence of prior sexual assaults is relevant to support the credibility and corroborate the testimony of the victims in the charged case. *Rivera*, 840 P.2d at 940. The same rationale applies in this case. In addition, the evidence of prior similar conduct counters any claim of innocent or accidental contact in the cases before the trial court.

The third factor of the *Huddleston* test requires the trial court to determine that the probative value of the evidence is not

substantially outweighed by its potential for unfair prejudice. That element mirrors a portion of W.R.E. 403, which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.] Heinemann contends that in permitting evidence of four prior sexual assaults, the trial court unfairly prejudiced him, because the jurors were likely to convict him of the charged offenses to punish him for the prior ones.

In examining this element of the *Huddleston* test, we keep in mind that its purpose is to prevent the State from introducing evidence that is unfairly prejudicial, not all prejudicial evidence. Evidence that is not in some way prejudicial would be irrelevant, since the purpose of evidence is to persuade the trier of fact of the validity of the charge. In *Daniel*, we affirmed the district court's analysis that the danger of unfair prejudice did not outweigh the probative value of evidence of six prior sexual assaults. *Daniel*, 923 P.2d at 735. The trial court here, as in *Daniel*, considered the danger of unfair prejudice and articulated a legitimate basis for its ruling. We hold, therefore, that no abuse of the trial court's discretion occurred when the trial court determined that the probative value of the prior bad acts evidence admitted here was not outweighed by the danger of unfair prejudice.

Finally, *Huddleston* requires that the trial court provide a limiting instruction if one is requested. The precise wording for such an instruction found in *Huddleston* is 'the similar acts evidence is to be considered only for the proper purpose for which it was admitted.' *Vigil*, 926 P.2d at 357 (*quoting Huddleston*, 485 U.S. at 691–92, 108 S.Ct. 1496). The instruction provided in both trials here was evidence of other conduct, that is, conduct other than that alleged in the Information, is allowed for the purpose of showing motive, intent, plan, or preparation on the part of the accused. That instruction describes the evidence to which it applies, and explains the limited purpose for which it is to be used. Heinemann complains that the instruction should have explained which portion of the W.R.E. 404(b) evidence was to be considered for each of the permissible pur-

poses. We hold, however, that the instruction satisfies the requirements of *Huddleston*, and is therefore sufficient.

Heinemann has failed to demonstrate error in the enhancement of his sentence or in the admission of evidence of his prior bad acts. The Judgment and Sentence of the Court entered in the trial court in each of the cases is affirmed.