**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 12, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ANTHONY HEINEMANN,

Petitioner - Appellant,

v.

MICHAEL MURPHY, in his official
capacity as Wyoming Department of
Corrections State Penitentiary Warden;
BRUCE SALZBURG, in his official
capacity as Wyoming Attorney General,

Respondents - Appellees.

No. 10-8018
(D.C. No. 2:08-CV-00072-WFD)
(D. Wyo.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY
AND DISMISSING APPEAL**

Before **BRISCOE**, Chief Circuit Judge, **TACHA**, and **O'BRIEN**, Circuit Judges.

Anthony Heinemann, a Wyoming state prisoner, seeks to appeal from the district

court's denial of his 28 U.S.C. § 2254 petition for writ of habeas corpus. The district

court determined his petition was not timely under the one-year limitation period

contained in the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See* 28

U.S.C. § 2244(d)(1). Because Heinemann has not shown "jurists of reason would find it

debatable whether the district court was correct in its procedural ruling," *Slack v.*

*McDaniel*, 529 U.S. 473, 484 (2000), we deny a certificate of appealability (COA) and

dismiss this appeal.

## I.

A jury convicted Heinemann of third-degree sexual assault in 1998. The Wyoming Supreme Court affirmed, *Heinemann v. State*, 12 P.3d 692 (Wyo. 2000), and the United States Supreme Court denied his petition for writ of certiorari on March 19, 2001.[1] *Heinemann v. Wyoming*, 532 U.S. 934 (2001).

While preparing Heinemann's petition for state post-conviction relief, his counsel discovered large portions of the record had not been transcribed. This discovery prompted a January 15, 2002 petition for writ of certiorari, or in the alternative, a writ of review with the Wyoming Supreme Court. He claimed his right to appeal was effectively denied and his appellate counsel provided ineffective assistance when she failed to notice the inadequate record. He requested a new opportunity to appeal his conviction based on a complete record. The Wyoming Supreme Court denied the petition on February 5, 2002, stating a claim of ineffective assistance of appellate counsel should be brought in a petition for post-conviction relief.[2]

---

[1] Heinemann has been represented by the Defender Aid Program at the University of Wyoming School of Law from this petition forward.

[2] In Wyoming, a claim in a petition for post-conviction relief is procedurally barred if the claim "[c]ould have been raised but was not raised in a direct appeal from the proceeding which resulted in the petitioner's conviction . . . ." Wyo. Stat. Ann. § 7-14-103(a)(i). "Notwithstanding paragraph (a)(i) of this section, a court may hear a petition if . . . . the [state trial] court makes a finding that the petitioner was denied constitutionally effective assistance of counsel on his direct appeal. This finding may be reviewed by the supreme court together with any further action of the district court taken on the petition." Wyo. Stat. Ann. § 7-14-103(b)(ii). Wyoming provides a five-year statute of limitations for seeking post-conviction relief. Wyo. Stat. Ann. § 7-14-103(d).

Heinemann filed a petition for post-conviction relief in state court on April 11, 2002. Among other issues, he claimed his appellate counsel was ineffective and his due process rights were denied because his appeal was based on an inadequate record. The state court granted Heinemann leave to complete the record and then amend his petition within sixty days. On May 6, 2003, Heinemann filed a motion to settle the record because he still had not received transcripts from two proceedings – a March 1998 hearing on his motion to suppress evidence and a voir dire held on June 2, 1998. He requested the court to "[d]irect the Official Court Reporters . . . to prepare the transcripts necessary to make the record in this matter complete; or determine whether the court reporters can ever provide a complete record; [or,] [i]n the alternative, remand the matter for a new trial." (R. Vol. I at 185.)

The judge did not directly rule on this motion but, in November 2003, sent a letter to the court reporter requesting the missing transcripts be provided within ninety days. The court reporter provided the March hearing transcript but did not provide a transcript of the June 2, 1998 voir dire. Instead, he sent a copy of the June 3, 1998 voir dire. [3] Presumably believing the record to be complete, the judge notified counsel of that fact on April 21, 2004. On May 12, 2004, defense counsel responded that "a few portions of the record may still be missing" [4] including the June 2, 1998 voir dire transcript. (R. Vol. II

---

[3] The court was unable to seat a jury on June 2, 1998. His case was tried to a jury (from a different pool of jurors) seated on June 3.

[4] Counsel's letter also referred to missing records from another case but this appeal involves only Heinemann's June 8, 1998 conviction in state court on the charges of third degree sexual assault, Docket No. 24-491. Shortly before his trial on this matter,

at 458.) Counsel stated:

> Although the proceedings on June 2 ended in a mistrial and jury selection began anew on June 3, the conduct of the June 2 proceedings, including what questions were permitted of prospective jurors and what questions were not, may have affected the way voir dire was conducted the next day. In addition, it is possible that on June 2 the court may have addressed other preliminary matters related to the trial.

(R. Vol. II at 460). The judge did not respond to counsel's speculation and counsel made no effort to complete the record by other means as permitted by Rule 3.03 of the Wyoming Rules of Appellate Procedure.[5] Nor did counsel provide an affidavit from trial counsel (or other evidence) explaining how possible errors what errors occurred in the

---

he was tried and convicted for indecent liberties with a minor and furnishing alcohol to a minor, a separate incident, in state court Docket No. 24-474. Because the cases were closely related in time, they were consolidated for sentencing and on direct appeal to the Wyoming Supreme Court. *See Heinemann*, 12 P.3d at 696-97. Heinemann's state petition for post-conviction relief, however, was based solely on Docket No. 24-491. We, therefore, do not consider any issues relating to the record in Docket No. 24-474 as addressed in counsel's letter to the court. Heinemann does not argue any portions of that transcript were necessary here.

[5] The Wyoming Rules of Appellate Procedure provide alternative means to present a record. Rule 3.03 provides:

> If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, appellant may prepare a statement of the evidence or proceedings from the best available means including appellant's recollection. The statement shall be filed and served on appellee within 35 days of the filing of the notice of appeal. Appellee may file and serve objections or propose amendments within 15 days after service. The trial court shall, within 10 days, enter its order settling and approving the statement of evidence, which shall be included by the clerk of the trial court in the record on appeal.

Heinemann did not, and has not to date, attempted to settle the record by this means. *See Bientema v. State*, 936 P.2d 1221, 1227 (Wyo. 1997) (stating appellant could not complain his right of appeal was prejudiced when he did not attempt to settle the record pursuant to Wyo. R. App. P. 3.03).

- 4 -

June 2 voir dire and how errors in a voir dire of potential jurors who had no part in his trial could have substantially affected his rights. It appears to be much ado about nothing.

Two years passed with no further activity. On June 20, 2006, Heinemann sent a certified letter to the court reporter requesting the missing voir dire transcript. The letter was returned, marked "refused." (R. Vol. II at 463.) In February 2007, counsel sought the aid of the court reporter's former assistant to no avail.

On November 14, 2007, the State filed a motion to dismiss Heinemann's petition for failure to prosecute. Heinemann objected, detailing his difficulties and stating he did not yet have a complete record but he still did not adequately explain why the June 2 transcript was necessary. He nevertheless filed a motion to compel the court reporter to provide the missing transcript. On December 12, 2007, the state court dismissed Heinemann's petition without a hearing and without addressing his motion to compel. Heinemann then filed a petition for review/certiorari in the Wyoming Supreme Court requesting his petition be reinstated and the court reporter be compelled to provide the missing transcript. In the alternative, he sought a new appeal. This petition was summarily denied on January 8, 2008.

Heinemann finally filed his § 2254 habeas petition on March 14, 2008. The State moved to dismiss because the petition was time-barred. *See* 28 U.S.C. § 2244(d). Despite Heinemann's objections, the court dismissed the petition and denied a COA. Heinemann renews his request for a COA with this Court.

## II.

A COA is a jurisdictional prerequisite to our review of a petition for a writ of habeas corpus. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The district court's procedural dismissal means Heinemann must demonstrate both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. at 484. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

A. Calculation of Time under AEDPA

AEDPA states in relevant part:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of— (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action; . . . or (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). The district court determined the statute of limitations began to run on March 19, 2001, the date the United States Supreme Court denied Heinemann's

petition for writ of certiorari. *See Locke v. Saffle*, 237 F.3d 1269, 1273 (10th Cir. 2001) (a conviction is final when "following a decision by the state court of last resort . . . the United States Supreme Court has denied review . . . ."). Therefore, absent statutory or equitable tolling, Heinemann had until March 19, 2002, to file his § 2254 petition. Heinemann did not do so until March 14, 2008, almost six years later.

Heinemann claims his petition is not time-barred because, without a complete record, there is no final judgment triggering the statute of limitations. In the alternative, he argues he is entitled to statutory or equitable tolling.

B. Final Judgment

Heinemann argues his appeal to the Wyoming Supreme Court was based on an incomplete record and, therefore, "he has never received adequate or meaningful direct review." (Appellant's Br. at 28). This is a question of statutory interpretation which we review de novo. *Shawnee Tribe v. United States*, 423 F.3d 1204, 1212 (10th Cir. 2005).

Heinemann relies on a recent Supreme Court case, *Jimenez v. Quaterman*, 129 S. Ct. 681 (2009). There, Jimenez's appealed from a 1995 conviction but his counsel filed an *Anders* brief. *Anders v. California*, 386 U.S. 738 (1967). Jimenenz claimed not to have received a copy of the brief nor did he receive the accompanying letter advising him of his right to file a pro se brief. He also claimed not to have received notice of the Texas Court of Appeals' dismissal of the appeal. When he learned his appeal had been dismissed, he filed an application in state court for a writ of habeas corpus. The Texas Court of Criminal Appeals decided he was denied his right to a meaningful appeal because he was denied the opportunity to file a pro se brief; it permitted him to file an

out-of-time appeal.  His conviction was again affirmed and discretionary review was denied.

Jimenez then filed an application for a federal writ of habeas corpus contending the one-year statute of limitations began when his out-of-time appeal became final.  After his claim was dismissed as time-barred, the Supreme Court granted review and reversed, stating:

> Our decision today is a narrow one.  We hold that, where a state court grants a criminal defendant the right to file an out-of-time direct appeal during state collateral review, but before the defendant has first sought federal habeas relief, his judgment is not yet "final" for purposes of § 2244(d)(1)(A).  In such a case, "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" must reflect the conclusion of the out-of-time direct appeal, or the expiration of the time for seeking review of that appeal.

*Jimenez*, 129 S. Ct. at 686-87.

According to Heinemann, the Supreme Court used the date Jiminez's out-of-time appeal became final "because petitioner's first appeal was in violation of his right to a meaningful appeal."  (Appellant's Br. at 28-29.)  He contends the same principle should apply here in light of his diligent and persistent campaign for a new appeal based on a complete record.  The Supreme Court, however, explicitly rejected this argument:

> We do not here decide whether petitioner could have sought timely federal habeas relief between October 11, 1997, when the 1-year limitations period initially expired, and September 25, 2002, when the state court ordered that his direct review be reopened.  Were such a petition timely, though, it would *not be through application of § 2244(d)(1)(A)* because we have previously held that the possibility that a state court may reopen direct review "does not render convictions and sentences that are no longer subject to direct review nonfinal," *Beard v. Banks*, 542 U.S. 406, 412, 124 S. Ct. 2504 (2004).  We do not depart from that rule here; we merely hold that, where a state court has in fact reopened direct review, the conviction is

rendered nonfinal for purposes of § 2244(d)(1)(A) during the pendency of
the reopened appeal.

*Jimenez*, 129 S. Ct. at 686 n.4 (emphasis added). Unlike Jimenez's narrow holding (out

of time appeal allowed) the Wyoming Supreme Court has never reopened Heinemann's

appeal. Absent another exception, the AEDPA statute of limitations began to run on

March 19, 2001.

C. Statutory Tolling – State Impediment

In the alternative, Heinemann argues the state's failure to provide a complete

transcript is an impediment that prevented him from filing his petition and this

impediment has yet to be removed. *See* § 2244(d)(1)(B). The district court determined,

even if the failure to provide a complete record was an "impediment," it did not prevent

Heinemann from filing his petition. (R. Vol. II at 365.) The court noted Heinemann

knew of his due process claim based on an incomplete record prior to the expiration of

AEDPA's statute of limitations. His other claims were either known or could have been

tailored from the available record. The district court concluded: "In sum, it does not

appear that a complete transcript will ever be available in this case and the Court is not

i[n] a position to indefinitely toll the statute of limitation based on speculative claims that

may be raised if a complete transcript could be completed." (*Id.* at 368.)

According to Heinemann, the district court's characterization of his possible

claims as "speculative" yokes him with an impossible burden -- he cannot identify an

issue without having seen the transcript. We appreciate Heinemann's theoretical

dilemma, but his perceived problems have not and do not amount to a realistic

impediment.

Courts have unanimously rejected the proposition that the absence of transcripts automatically triggers statutory tolling under § 2244(d)(1)(B). *See Clark v. Okla.,* 468 F.3d 711, 714 (10th Cir. 2006) (petitioner "failed to explain why the documents held by the state were necessary to pursue his federal claim"); *May v. Workman*, 339 F.3d 1236, 1237 (10th Cir. 2003) ("the limitations period should not be tolled during the pendency of Mr. May's various motions for transcripts and petitions for writs of mandamus relating to those motions") (citing *Osborne v. Boone*, 176 F.3d 489, No. 99-7015, 1999 WL 203523, at *1 (10th Cir. April 12, 1999) (unpublished) ("attempts to obtain trial records and transcripts at public expense are not collateral proceedings which would result in the tolling of the filing period under § 2244(d)(2)"); *Lloyd v. Van Natta,* 296 F.3d 630, 633 (7th Cir. 2002) (absence of transcript did not prevent petitioner from filing habeas corpus petition); *Jihad v. Hvass*, 267 F.3d 803, 806 (8th Cir. 2001) (lack of access to transcript does not preclude petitioner from commencing habeas corpus proceedings). Heinemann does not direct us to any case holding to the contrary.

The First Circuit explained what it means to "prevent" filing a habeas petition as follows:

> [A] state-created impediment must, to animate the limitations-extending exception, "prevent" a prisoner from filing for federal habeas relief. That gets the grease from the goose. The verb "prevent," in common parlance, means to frustrate, hold back, or keep from happening. The question, then, is whether Wood was "prevented" from filing a federal habeas petition . . . .
>
> In answering that question, Wood's available alternatives are of considerable relevance. After all, were someone to erect a barrier across a highway, it would be impossible to decide whether the barrier "prevented"

> a motorist from proceeding to his destination without credible information as to the width of the highway, the size of the barrier, and the dimensions of the vehicle. If the barrier left ample room for the vehicle to pass, it could not fairly be said to "prevent" the motorist's access to his destination.

*Wood v. Spencer*, 487 F.3d 1, 7 (1st Cir. 2007) (citations omitted).

Perhaps most directly on point, in *Lloyd v. Van Natta*, the petitioner claimed "that the state's failure to provide him with a complete trial transcript impeded his ability to file his habeas corpus petition, and that the statute of limitations therefore should not begin to run until he receives the transcripts." 296 F.3d at 633. In particular, he claimed "he was unable to present his strongest argument to the court—that the prosecution engaged in misconduct during closing arguments—because he [had] yet to obtain a transcript of the opening and closing arguments of his trial." *Id.* The Seventh Circuit disagreed:

> The state's failure to provide Mr. Lloyd with a transcript did not prevent him from filing his habeas corpus petition, and the time limit contained in § 2244(d)(1)(B) does not apply to this case. Although neither § 2244 nor this circuit has defined what constitutes an "impediment" for purposes of § 2244(d)(1)(B), the plain language of the statute makes clear that whatever constitutes an impediment must *prevent* a prisoner from filing his petition. Even though Mr. Lloyd apparently has not yet received the transcripts he sought, he was able to raise the issue of prosecutorial misconduct in his federal habeas corpus petition.

*Id.*

Heinemann, too, had available alternatives. The Wyoming Supreme Court directed him to file his petition for state post-conviction relief on February 5, 2002. At that point, he still had until March 19, 2002 -- over one month -- before the AEDPA's statute of limitations ran. He could have attempted to settle the record pursuant to Rule

- 11 -

3.03 of the Wyoming Rules of Appellate Procedure.  He could have filed his petition for state post-conviction relief within the federal statute of limitations, tolling the statute while he made his efforts to secure a complete record.  *See*  28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.").  But he did not.  His state petition was not filed until April 2002.  He gives no reason why he waited until after the federal limitations statute expired.[6]

Moreover, the district court carefully considered the claims he alleged in his 2008 petition and determined the record was sufficient to bring those claims in 2002.  We agree.  Heinemann's claims of foul regarding the necessity of the June 2 voir dire proceeding posit no reasonable chance of containing any unknown claim.  The questions asked of potential jurors who did not hear his case have nothing to do with the questions actually asked of those who did, in fact, hear his case— information contained in the

---

[6] As an aside, Heinemann now argues the Wyoming Supreme Court improperly advised that these issues be addressed in a petition for post-conviction relief. Specifically, he contends: "The state post conviction statute . . . is limited to addressing errors in the proceedings that led to conviction – not to errors on appeal.  Thus, the state court in a post conviction proceeding could not grant Mr. Heinemann relief from the due process violations that occurred in his appeal." (Appellant's Br. at 32 n.8) (citations omitted).)  This argument is unavailing.  "Wyo. Stat. Ann. § 7-14-103(b)(ii) clearly contemplates a claim by a petitioner of ineffective assistance of appellate counsel. Further, the language in § 7-14-101(b) providing for a remedy for constitutional violations that 'resulted in conviction' includes alleged violations during the direct appeal, the latter being an integral part of the conviction process in Wyoming." *Parkhurst v. Shillinger*, 128 F.3d 1366, 1372 (10th Cir. 1997).  Moreover, if Heinemann's contention was valid, this would be a compelling reason for Heinemann to seek federal habeas relief without delay.

transcript of the June 3 proceedings, which was provided to him. As to possible resolutions of pre-trial issues, Heinemann had access to the written rulings of the court on those issues. As a result, jurists of reason could not debate that Heinemann had no state impediment preventing him from filing a timely petition.

D.  Equitable Tolling

The statute of limitations contained in 28 U.S.C. § 2244(d) is subject to equitable tolling. *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010). A petitioner is entitled to equitable tolling only if he demonstrates (1) he diligently pursued his rights and (2) some extraordinary circumstance prevented his timely filing. *Id.* at 2562; *see also Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008). We review a district court's decision to deny equitable tolling for an abuse of discretion. *Fleming v. Evans*, 481 F.3d 1249, 1254 (10th Cir. 2007).

Other circuits have considered and rejected the argument made here – the unavailability of a transcript warrants equitable tolling. *See Lloyd*, 296 F.3d at 634 ("[E]quitable tolling does not excuse Mr. Lloyd's late filing simply because he was unable to obtain a complete trial transcript before he filed his § 2254 petition."); *Donovan v. Maine*, 276 F.3d 87, 93 (1st Cir. 2002) ("[T]he state court's delay in furnishing the petitioner with the transcript did not establish a basis for equitable tolling"); *Jihad*, 267 F.3d at 806 (lack of access to transcript does not warrant equitable tolling); *Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir. 2001) (rejecting equitable tolling argument based on alleged delay in receipt of a transcript).

Heinemann relies on the contrary result reached in *King v. Bell*, 378 F.3d 550 (6th

Cir. 2004). In *King*, the petitioner filed a notification of intent to file a habeas petition in federal court. The AEDPA statute of limitations was set to expire in November 2000. The federal court appointed counsel and granted King six months to prepare his petition without leave to amend, setting a deadline of September 29, 2000. On August 23, 2000, King's attorneys filed a motion to have the voir dire transcribed, which the court granted. On September 28, 2000, due to a delay in receiving the transcript, the parties agreed King would have fifteen days after receiving the transcripts to file his habeas petition. The transcripts were finally ready in June 2001, and the petition was filed within fifteen days. The government responded with a motion to dismiss, citing 28 U.S.C. § 2244(d)(1). The district court *sua sponte* changed the motion to dismiss to a motion for summary judgment and granted it on statute of limitations grounds.

> The Sixth Circuit reversed, concluding equitable tolling was warranted:
>
> King was diligent about pursuing his rights: within nine months of denial of post-conviction relief, he had filed a petition for certiorari, an intent to file a habeas petition, received counsel, and had established a filing schedule. Furthermore, he did not file according to the original schedule *only* because the government did not comply timely with a court order to produce *voir dire* transcripts. When King filed within the court-allotted 15 days after receiving the transcripts, he had no reason to anticipate any procedural difficulties: he had complied with the court-approved schedule, as modified in September 2000 . . . . [W]e cannot expect that he would have known that the effect of the delay, over which he had no control, would be the loss of his ability to file a petition at all.

378 F.3d at 553. Heinemann argues his case is analogous to *King* in two ways—he had no control over the court reporter or the state court and he exercised every option available to him to obtain a complete record. Not so. As discussed above, he failed to take advantage of Rule 3.03 of the Wyoming Rules of Appellate Procedure.

- 14 -

But the facts of this case differ from King's in a more significant way. King's notice of his intent to file his petition in the federal court was presented well within the statute of limitations. In contrast, Heinemann allowed the federal deadline to expire.

Heinemann focuses on his efforts after filing his state post-conviction motion on April 11, 2002. But, by that time, it was already too late. *See Clark*, 468 F.3d at 714 ("Only state petitions for post-conviction relief filed within the one year allowed by AEDPA will toll the statute of limitations."). As discussed above, Heinemann had forty-two days after the Wyoming Supreme Court's February 5, 2002 decision in which to either file his federal habeas petition or file state post-conviction proceedings to toll the statute of limitations.[7] His failure to timely take either course belies his claims of diligence. Heinemann was diligent in tilting at windmills but let the most significant deadline pass without fanfare. Jurists of reason could not debate the district court's dismissal of Heinemann's petition.

Heinemann's request for a COA is DENIED and his appeal is DISMISSED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

---

[7] Heinemann does not argue that his petition to the Wyoming Supreme Court was "other collateral review with respect to the pertinent judgment or claim," which would toll the statute of limitations. 28 U.S.C. § 2244(d)(2). Without deciding the issue, even if the time period in which his petition was filed and considered is discounted (January 15 – February 5, 2002), the statute of limitations expired on April 10, 2002.